IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FLOYD E. MARQUEZ,**

        Plaintiff,

vs.                                                Civ. No. 05-898 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed January 21, 2006. Docket No. 16. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken and will be granted.

### I.  PROCEDURAL RECORD

Plaintiff, Floyd E. Marquez, filed an application for Supplemental Social Security Income on August 1, 2003, with a protective filing date of June 24, 2003. Tr. 56, 59. He is alleging a disability since April 28, 2003, due to back pain, right arm pain, right knee problems and depression. Tr. 67. His application was denied at the initial and reconsideration level.

The ALJ conducted a hearing on October 8, 2004. Tr. 353. At the hearing, Plaintiff was

represented by a non-attorney. On February 16, 2005, the ALJ issued an unfavorable decision finding at step five that pursuant to the "grids" and testimony of a vocational expert, Plaintiff is not disabled. Tr. 27-28. The ALJ found that Plaintiff had the residual functional capacity ("RFC") for sedentary work and could perform the jobs of a mail sorter, charge accounts clerk and jewelry preparer. Tr. 27.

On June 28, 2005, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr. 5-8. The Plaintiff subsequently filed his Complaint for judicial review of the ALJ's decision on August 24, 2005.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific

sequence in analyzing disability applications. 20 C.F.R. § 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1) he is not engaged in substantial gainful employment; 2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3) his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

### III. MEDICAL HISTORY

Plaintiff was involved in an automobile accident on April 28, 2003. Tr. 160, 233. In the months following the accident Plaintiff reported pain, tingling and numbness of the right upper extremity, weakness in both lower extremities, cold paresthesias of both feet and depression. Tr. 150-53, 156, 161, 177. Initial attempts at physical therapy were unsuccessful. Tr. 171.

In July of 2003, Mark Berger, M.D., a neurologist, evaluated the Plaintiff and reviewed a MRI of the lumbar and cervical spine. Tr. 156. Dr. Berger noted spondylitic changes at C4-5 and C5-6, with some foraminal stenosis on the right and lumbar spondylitic changes at multiple levels. *Id.*

From January 2004 to September of 2004, Plaintiff was treated by James H. Rice, M.D. of Southwest Interventional Pain Specialists, P.C. After Plaintiff's failure to respond to epidural steroid injections, he was given facet steroid infections. Tr. 228. These treatment improved his pain, but the

effects were short-lived. Tr. 260, 262, 358. Dr. Rice administered a nerve block in August of 2004. Tr. 260-61. In September of 2004, Dr. Rice administered radiofrequency ablation.[1] Tr. 267-71. After this treatment, Plaintiff attempted to work. Tr. 267. However, he was limited, not by his back but by his shoulder and arm pain. *Id*. Dr. Rice then performed a cervical epidural steroid injection. Tr. 267-68. In January of 2005, a repeat cervical MRI showed disc herniation on the right at C4-5 and C5-6. Tr. 341, 344-45. He underwent an anterior fusion of C4 through C6 on February 17, 2005. Tr. 331.

In June of 2003, Arnold W. Valdivia, MD ordered an MRI on Plaintiff's's right knee. Tr. 221. The MRI revealed edema in the patella and the femoral condyle, compatible with osteochondritis. Tr. 216. It also showed a cartilagionous defect. *Id*.

An MRI of the shoulder taken in August of 2003 showed rotator cuff tendinitis, or a partial tear of the superior surface of the tendon, with mild impingement of the acromioclavicular joint. Tr.. 170. In January of 2004, Michael S. Mitnik, M.D. performed a right shoulder arthroscopy with subacrominal decompression. Tr. 242-43.

The record also contains medical records concerning Plaintiff's alleged mental impairment. Soon after the accident Plaintiff reported to Dr. Berger that he had difficulty thinking and his personality had changed. Tr. 157. Dr. Berger diagnosed post-traumatic syndrome. Tr. 158.

Plaintiff has asserted in documents which are part of the record and testified at the administrative hearing that he became depressed after his injury. Tr. 129, 131, 359. He further asserted that he was not able to engage in formerly enjoyable activities, such as gardening and raising

---

[1]"In radiofrequency ablation (RFA), heat is generated locally by a high frequency, alternating current that flows from the electrodes...The local heat that is generated melts the tissue (coagulative necrosis) that is adjacent to the probe." *http://www.med.terms.com.*

small animals. Tr. 121, 123, 366. He was prescribed antidepressants, but testified he had too many side effects and felt they caused him to contemplate suicide. Tr. 186, 218, 365. His depression has affected his ability to concentrate and perform normal activities such as paying bills. Tr. 133, 187, 364-65.

Shortly after the accident, Plaintiff sought medical assistance for his depression. He saw George Baca, M.D. for a psychiatric evaluation on June 19, 2003. Dr. Baca diagnosed him with "296.23 depression, single episode." Tr. 188. Dr. Baca rated Plaintiff's Global Assessment of Functioning ("GAF")[2] at 40. Id. After the accident the record demonstrates that Plaintiff was prescribed medication for his depression from May of 2003 to February of 2005. Tr. 71, 105, 184-90, 220, 221, 339.

## IV. DISCUSSION

In his Motion Plaintiff asserts that: 1) the ALJ's residual functional capacity ("RFC") finding is not supported by the substantial evidence; 2) the ALJ erred in finding that Plaintiff prohibited from overhead reaching only; 3) the ALJ hypothetical question to the vocational expert is contrary to law because it did not include Plaintiff's mental impairment and omitted a description of Plaintiff's need to change positions; and 4) the ALJ's credibility finding is contrary to the evidence and the law. Because the Court finds that the ALJ erred at step two, the Court need not address Plaintiff's remaining arguments.

The ALJ found at step two, *inter alia*, that Plaintiff's depression was not a severe impairment. At step two, the claimant must show that he has an impairment or combination of impairments severe

---

[2]The GAF rating is used to report "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")* 30 (4th ed. 1994).

enough to limit his ability to do basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities that pertain to mental impairments include: (1) understanding, carrying out, and remembering simple instructions; (2) use of judgment; (3) responding appropriately to supervision; and (4) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).  At step two, the ALJ must apply a *de minimus* standard to determine whether an impairment significantly limits the claimant's ability to do basic work activity. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Only the most trivial impairment is not considered severe. *Taylor v. Bowen*, 738 F. Supp. 436, 440 (D. Kan. 1987).  If the evidence is unclear as to whether the impairment is severe or not the sequential evaluation process continues.  *Social Security Ruling 85-28*.  At this step, the Commissioner relies only on the medical evidence to determine whether an impairment is severe. *Id*. .

> In her decision, the ALJ wrote the following regarding Plaintiff's alleged mental impairment:
>
> In terms of the claimant's depression the medical evidence has demonstrated that it would have no more than a minimal effect on the claimant's ability to perform basic work activity. The medical records indicate that the claimant is not undergoing any treatment for depression.  He indicated that he was not taking any medication for depression. (Exhibit 12E).  The medical records indicated that the claimant has had depression that was related to stress from his motor vehicle accident and the pain that he has been having, and his ability to work and financial problems. (Exhibit 2F and 17F).

Tr. 20.

The ALJ concluded that Plaintiff's depression was "non-severe." *Id*.

In considering the record as a whole, the Court cannot say that substantial evidence supports the ALJ's decision at step two that Plaintiff's alleged mental impairment was not severe. *Gossett v. Bowen,* 862 F. 2d 802, 805 (10th Cir. 1988) (A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record.) Plaintiff had a diagnosed mental illness and was put on medication. The medical records contain

evidence that Plaintiff's illness impairs his ability to work.  Of particular significance is the Plaintiff's GAF of 40.  This is evidence of "impairment in reality testing or communication (e.g., . speech is at time illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g. depressed man avoids friends neglects family, and is unable to work; ....)" *DMS-IV* at 32.

> "Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work...A GAF score of fifty or less, however, does suggest an inability to keep a job. (citation omitted)  In a case like this one, decided at step two, the GAF score should not have been ignored." *Lee v. Barnhart,* 117 Fed. Appx. 674, 678 (10th Cir. 2004).

Plaintiff was diagnosed with "depression, single episode."  According to the *DSM-IV*, the symptoms of a major depressive episode "cause clinically significant distress or impairment in social, occupational other important areas of functioning."  *DSM-IV* at 327.

In finding that the Plaintiff was not taking any medication for depression, the ALJ cited to one exhibit, Exhibit 12E.  The ALJ is correct in that this exhibit does not indicate any medication for depression.  However, the ALJ's reliance on this exhibit is misplaced.  As discussed above, the record as a whole demonstrates that Plaintiff was prescribed anti-depressants from May of 2003 to February of 2005.  Tr. 71, 105, 184-90, 220, 221, 339.  The record also shows that Plaintiff had trouble with the side effects of anti-depressants and at times did not take his medication.  Tr. 186, 218, 365.  The ALJ did not explain her reasoning as to why she relied on one exhibit that did not list any anti-depressant medications while numerous other exhibits show that Plaintiff was indeed prescribed anti-depressant medication.  Nor did the ALJ make the analysis required to deny benefits for failure to follow prescribed treatment.  20 C.F.R. §§ 404.1530 and 416.930; *Robinson v. Barnhart*, 366 F.3d 1078, 1083-84 (10th Cir. 2004).

As a remand is required because the ALJ erred at step two the Court does not need to rule on Plaintiff's other alleged errors. However, the Court notes it is not clear as to what evidence in the record the ALJ relied on in determining the Plaintiff's RFC. The ALJ rejected the RFC of a nurse practitioner on the grounds that she was not an acceptable medical source. 20 C.F.R. § 416.913; Tr. 26. The ALJ also declined to adopt the RFC determination of the non-examining consulting physicians. Tr. 25. The ALJ never specified what she believed to be the credible medical evidence in support of her RFC finding. This is error.

Also, in her hypothetical to the vocational expert, the ALJ states that the Plaintiff cannot perform a job that requires him to reach overhead. Tr. 368. However, the physician who completed the Physical Residual Functional Capacity Assessment determined that the Plaintiff is limited in reaching in all directions, not just overhead. Tr. 194. This limitation cannot be ignored. *Saiz v. Barnhart*, 392 F.3d 397, 399, n.2. (10th Cir. 2004).

Finally, the ALJ found that Plaintiff's pain was a severe impairment. However, in commenting on Plaintiff's complaints of pain and Plaintiff's credibility, the ALJ failed to properly analyze Plaintiff's complaints of pain. In analyzing pain, the ALJ must consider three factors: (1) whether there is objective medial evidence of a pain-producing impairment; (2) whether there is a loose nexus between this objective evidence and the pain; and (3) whether, in light of all the evidence, both objective and subjective, the pain is disabling. *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). The ALJ did not perform this analysis.

For all the foregoing, the Court finds that this matter should be remanded to the Commissioner for proceedings consistent with this Memorandum Opinion and Order.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand

Administrative Decision is granted for proceedings consistent with this opinion.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**